IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNA E. BEYER,

Plaintiff,

vs. Case No. 17-2689-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On December 28, 2016, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 92-101). Plaintiff alleges that she has been disabled since December 11, 2013 (R. at 92). Plaintiff is insured for disability insurance

benefits through March 31, 2015 (R. at 94). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from her alleged onset date through her date last insured (R. at 94). At step two, the ALJ found that plaintiff has severe impairments (R. at 94). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 96). After determining plaintiff's RFC (R. at 96), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 99). At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 100). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 100-101).

**III. Did the ALJ err in his consideration of the treating source opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v.

Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating physician Dr. Tiffany Williams, prepared a RFC report on the plaintiff, dated October 18, 2016. Dr. Williams had been treating plaintiff since October 28, 2014. She indicated that plaintiff suffered from back and neck pain. She opined that pain would constantly interfere with her attention and concentration needed to perform even simple tasks. She stated that plaintiff could sit and stand/walk for less than 2

hours in an 8 hour workday. She must be able to shift positions at will, and would need to take unscheduled breaks every hour. She indicated that plaintiff would miss more than 4 days per month due to impairments or treatment. She indicated that MRI's of the spine and abdomen, ultrasound of the abdomen, and a CT of the abdomen support her findings. She stated that plaintiff has had these symptoms and limitations since December 11, 2013 (R. at 918-922).

Dr. Daniel Buckles, another treating physician, had been treating plaintiff since 2009. He prepared a RFC report, dated October 27, 2016, on the plaintiff regarding the impact of her Crohn's disease. He identified multiple symptoms, including chronic diarrhea, bloody diarrhea, fatigue, weight loss, malaise, loss of appetite, anal fissures, bowel obstruction and abdominal pain and cramping. He stated that plaintiff's pain and other symptoms would frequently interfere with attention and concentration. He opined that plaintiff would need unscheduled bathroom breaks frequently, for 15 minutes each time. Plaintiff may be able to give only a few minutes notice of the need for a break. He concluded that plaintiff would miss three days of work per month because of her impairments or treatment (R. at 571-574).

The ALJ gave "limited" weight to the opinions of Dr. Williams, explaining as follows:

> They [the opinions of Dr. Williams] are not supported by the treatment notes in the record that indicate her Crohn's disease was well controlled. They are not supported by the record that shows she has only very mild degenerative disc disease. Additionally, they are inconsistent with the fact that she is able to engage in numerous activities of daily living, including cleaning houses for pay, which indicates she is not significantly limited by her impairments.

(R. at 99).

The ALJ gave "limited" weight to the opinions of Dr. Buckles, explaining as follows:

> They [the opinions of Dr. Buckles] are not supported by his own treatment notes that generally indicate her Crohn's was well controlled with medications. Furthermore, they are inconsistent with the objective testing that showed only mild to moderate inflammation during the relevant period. Additionally, they are inconsistent with the fact that she is able to engage in numerous activities of daily living including cleaning houses for pay, which indicates she is not significantly limited by her impairments.

(R. at 99).

The only other medical opinion evidence regarding plaintiff's RFC was a report, dated June 5, 2015, prepared by a non-examining medical source, Dr. Hunter, who reviewed the medical records available to her on or before that date. Dr. Hunter opined that plaintiff did not have a severe physical impairment (R. at 174, 99), and can perform medium work with no other limitations (R. at 176-177). The ALJ afforded this

opinion “limited” weight as evidence submitted at the hearing level indicates she would have some limitations imposed by her Crohn’s disease and anemia, noting that she requires ongoing infusions to treat her Crohn’s (R. at 99). The only limitation set forth in the ALJ’s RFC finding is that plaintiff is limited to sedentary work (R. at 96).

Plaintiff argues that the ALJ erred by discounting the opinions of the two treating sources, Dr. Williams and Dr. Buckles. Plaintiff further argues that no substantial medical evidence supports the ALJ’s RFC findings. As noted above, the ALJ gave limited weight to all three medical source opinions regarding plaintiff’s RFC.

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013). An exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. That said, in cases in which the medical opinions appear to conflict with the ALJ’s decision regarding the extent of a plaintiff’s impairment(s) to the point of posing a serious challenge to the ALJ’s RFC assessment, it may be inappropriate

for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d at 1071-1072 (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

First, the ALJ stated that he was giving only limited weight to the opinions of Dr. Hunter because plaintiff would have some limitations imposed by her Crohn's disease. However, the only limitation made by the ALJ was to limit plaintiff to sedentary work (Dr. Hunter had indicated that plaintiff could perform medium work). Dr. Buckles, who treated plaintiff for Crohn's disease, and prepared a RFC report which only addressed plaintiff's Crohn's disease, did not place any exertional or lifting limitations on plaintiff because of this disease. He opined, as noted above, that plaintiff's pain and symptoms would frequently interfere with attention and concentration, and that she would require frequent restroom breaks, and would miss work about 3 days a month because of her Crohn's disease (R. at 571-574). Dr. Williams, in her RFC assessment, which considered plaintiff's Crohn's disease, chronic back pain, degenerative disc disease, and arthritis, opined that plaintiff's numerous

limitations would not even allow her to perform the exertional requirements for sedentary work. The ALJ failed to cite to any evidence that would support a finding that the symptoms of her Crohn's disease would limit her to sedentary work, or that, with a limitation to sedentary work, plaintiff could still be employed. The narrative discussion by the ALJ fails to describe how the evidence supports a finding that plaintiff, given her Crohn's disease, and other severe impairments, could perform substantial gainful activity with only a limitation to sedentary work.

Second, although an exact correspondence is not required between a medical opinion and the ALJ's RFC findings, all of the medical opinions clearly conflict with the ALJ's decision to the point of posing a serious challenge to the ALJ's RFC assessment. The ALJ gave limited weight to all three medical opinions, and provided absolutely no evidence in support his finding that plaintiff, with only a limitation to sedentary work, could perform substantial gainful activity in the national economy.

Third, in discounting the opinions of Dr. Buckles, the ALJ stated that their opinions were inconsistent with the objective testing which showed "only mild to moderate inflammation during the relevant period" (R. at 99). However, the medical records from November 26, 2014, state that the results of a colonoscopy indicated that plaintiff had "acute and chronic inflammation"

(R. at 449). Even the ALJ noted this finding in his report (R. at 98). Acute and chronic inflammation is not consistent with the ALJ’s assertion that the testing showed only mild to moderate inflammation. The ALJ misstated the evidence. Substantial evidence does not support the ALJ’s assertion that the objective testing showed only mild to moderate inflammation during the relevant period.

Finally, the ALJ found that the opinions of Dr. Buckles and Dr. Williams are inconsistent with the ALJ’s finding that plaintiff is able to engage in numerous activities of daily living, including cleaning houses for pay. More specifically, the ALJ described plaintiff’s descriptions of her daily activities as “essentially normal,” and that she leads an active lifestyle, water skiing, running several times a week, and singing (R. at 99).

The record indicates that in June 2013 plaintiff reported working 3-4 hours a week cleaning homes (R. at 283). Plaintiff indicated in December 2014 that she cleans 3 houses a month, and that her pain, fatigue and exhaustion is at its peak during and after this; plaintiff indicated that she is completely out of commission the next day (R. at 332).

Plaintiff’s December 2014 function report indicates that plaintiff engages in various household tasks, but only for as long as she has the energy. If she does too much, she is out of

commission the next day. She pointed out that her husband helps with everything (R. at 325). She indicated that she needs help to finish tasks when she gets exhausted (R. at 326). At the hearing in November 2016, plaintiff testified that she does the best she can to help out with household tasks, but that she gets worn out easily, and her husband has to pick up a lot of the slack with household chores (R. at 120).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that

claimant’s allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has “the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.” In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: “**We have repeatedly held...that ‘the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work**.’” Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

> [The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. “The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted].”

705 F.3d at 278.

The ALJ's assertion that plaintiff's description of her daily activities as essentially normal is not supported by substantial evidence. Although plaintiff stated and testified that she tries to perform household tasks, she further indicated that she tires easily and that her husband helps with everything and has to pick up a lot of the slack. Plaintiff indicated that she cleans homes 3-4 hours a week, but that she is completely out of commission the next day. She also indicated that if she tries to do too much at home, she is out of commission the next day. For this reason, the court finds that the ALJ's activities of daily living, including cleaning houses for pay, do not provide substantial evidence for discounting the opinions of Dr. Buckles and Dr. Williams.

For the reasons set forth above, substantial evidence does not support the reasons offered by the ALJ for giving only limited weight to the opinions of Dr. Buckles and Dr. Williams. The court further finds that substantial evidence does not support the ALJ's RFC finding that plaintiff can perform sedentary work. On remand, the ALJ shall make new RFC findings after reevaluating the opinions of the two treatment providers. The ALJ may also want to consider whether further medical evidence is needed on the issue of plaintiff's RFC. See Wells, 727 F.3d at 1072.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th_ day of September 2018, Topeka, Kansas.

s/Sam A. Crow__________________________
Sam A. Crow, U.S. District Senior Judge